## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EUGENE H. MCCLEARY, JR., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 10-1116** |
| | ) | **Electronic Filing** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION

### I.    INTRODUCTION

Plaintiff Eugene H. McCleary, Jr. ("McCleary"), brings this action pursuant to 42 U.S.C.
§§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of
Social Security ("Commissioner") denying his applications for disability insurance benefits
("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social
Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f].  The parties have filed cross-motions
for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the record has been
developed at the administrative level.  For the reasons that follow, the motion for summary
judgment filed by McCleary (*ECF No. 5*) will be denied, the motion for summary judgment filed
by the Commissioner (*ECF No. 7*) will be granted, and the Commissioner's administrative
decision will be affirmed.

### II.    PROCEDURAL HISTORY

McCleary protectively applied for DIB and SSI benefits on April 27, 2006, alleging
disability as of March 10, 2006.  R. 69, 74, 92, 125.  The applications were administratively

denied on October 18, 2006.  R. 51, 56.  McCleary responded on November 17, 2006, by filing a

timely request for an administrative hearing.  R. 63.  On April 1, 2008, a hearing was held in

Seven Fields, Pennsylvania, before Administrative Law Judge James J. Pileggi (the "ALJ").  R.

23.  McCleary, who was represented by counsel, appeared and testified at the hearing.  R. 27-41.

Dr. Fred Monaco, an impartial vocational expert, also testified at the hearing.  R. 41-45.  In a

decision dated June 20, 2008, the ALJ determined that McCleary was not "disabled" within the

meaning of the Act.  R. 11-22.  McCleary filed a request for review with the Appeals Council on

June 26, 2008.  R. 10.  He later submitted documentary evidence to the Appeals Council that had

never been presented to the ALJ.  R. 4-5, 544-593.  The Appeals Council denied McCleary's

request for review on June 25, 2010, thereby making the ALJ's decision the final decision of the

Commissioner in this case.  R. 1.  McCleary commenced this action on August 25, 2010, seeking

judicial review of the Commissioner's decision.  ECF No. 1.  McCleary and the Commissioner

filed motions for summary judgment on November 30, 2010, and January 13, 2011, respectively.

ECF Nos. 5 & 7.  These motions are the subject of this memorandum opinion.

## III.    STANDARD OF REVIEW

        This Court's review is plenary with respect to all questions of law.  *Schaudeck v.*

*Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect

to factual issues, judicial review is limited to determining whether the Commissioner's decision

is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46

(3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision

or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-

1191 (3d Cir. 1986).  Congress clearly has expressed its intention that "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive." 42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate

explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further.  At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  §§ 404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  §§ 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.  §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision.  In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law.  That rule is to the effect that a reviewing court, in dealing

> with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## IV.   THE ALJ'S DECISION

In his decision, the ALJ determined that McCleary had not engaged in substantial gainful activity subsequent to his alleged onset date. R. 16. McCleary was found to be suffering from "status-post right occipital ischemic infarction," a "loss of vision at the left visual field," and "bilateral hearing loss." R. 16. His eye impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), while his hearing impairment was deemed to be "nonsevere." R. 16. The ALJ concluded that McCleary's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. 17.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed McCleary's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant cannot be exposed to loud noises or a visually stimulative environment. The claimant is unable to drive and cannot perform work requiring binocular vision.

R. 17.  McCleary had past work experience as a mechanic, sheeter and welder.  R. 42.  Dr.

Monaco testified that these jobs were classified at the "heavy"[1] level of exertion.  R. 42.  Since

McCleary was found to be limited to "light"[2] work, it was determined that he could not return to

his "past relevant work."[3]  R. 20.

McCleary was born on July 18, 1963, making him forty-two years old on his alleged

onset date and forty-four years old on the date of the ALJ's decision.  R. 27-28.  He was

classified as a "younger person" under the Commissioner's regulations.  20 C.F.R. §§

404.1563(c), 416.963(c).  He had the equivalent of a high school education and an ability to

communicate in English.  R. 95, 102; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5).  Given

the applicable residual functional capacity and vocational assessments, the ALJ concluded that

McCleary could work as a bench assembler, a document preparer, or an unarmed guard.  R. 21.

Dr. Monaco's testimony established that these jobs existed in the national economy for purposes

of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[4]  R. 42-45.

---

[1] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds."  20 C.F.R. §§ 404.1567(d), 416.967(d).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it.  20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1).  The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity."  20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy."  *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003).  This burden is commonly satisfied by means of vocational expert testimony.  *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

## V.      THE MEDICAL EVIDENCE

### A.      The Evidence Presented to the ALJ

After working as a mechanic for several years, McCleary worked as a welder from November 2005 through March 2006.  R. 97.  He visited his optometrist, Dr. Gwen Coltz, for a routine eye examination in February 2006.  Dr. Coltz determined that McCleary had a hemianopsia in his left eye.  R. 17.  A magnetic resonance imaging ("MRI") scan conducted on February 28, 2006, revealed that McCleary had suffered a right occipital lobe infarction.  R. 149, 356.  He was referred to Dr. Perry Younger, an eye specialist, for follow-up care.  R. 148.

McCleary stopped working on March 10, 2006, at the advice of his primary care physician, Dr. Joseph Gent.  R. 30, 96.  Shortly thereafter, McCleary stopped driving and surrendered his driver's license.  R. 28-29.  He later sought treatment from Dr. James McLaughlin, a neurologist.  Dr. McLaughlin examined McCleary on April 24, 2006.  R. 141-143, 478-480.  Dr. McLaughlin indicated that while the lesion on McCleary's brain was not new, McCleary had known nothing about it prior to his routine eye appointment with Dr. Coltz.  R. 141, 143.  At a follow-up appointment on June 6, 2006, Dr. McLaughlin recommended that McCleary engage in thirty minutes of moderate exercise per day.  R. 140, 160, 410, 477.

On June 9, 2006, Dr. Gent submitted a form to the Pennsylvania Department of Public Welfare ("DPW") declaring McCleary to be "permanently disabled."  R. 195.  Dr. Younger, however, reported on June 20, 2006, that McClearly "would probably do well at a desk job or other vocation not involving machinery or driving," and that he could "function quite well with his current level of vision."  R. 203.  Dr. Younger described McCleary's prognosis as "stable."  R. 204.

Dr. Roger Virgile performed a consultative ophthalmologic and physical examination of McCleary on September 20, 2006.  R. 205-210.  No limitations were found with respect to McCleary's lifting, carrying, standing, walking, sitting, pushing and pulling abilities.  R. 208. Dr. Virgile indicated that McCleary was limited to only occasional balancing and climbing, and that he needed to avoid heights and moving machinery.  R. 209.  McCleary's "reaching" and "seeing" abilities were deemed to be limited.  R. 209.

Edward Jonas ("Jonas"), a nonexamining psychological consultant, opined on October 10, 2006, that McCleary did not have a "severe" mental impairment.  R. 261-264.  Dion Shively ("Shively"), a nonexamining medical consultant, suggested on October 13, 2006, that McCleary could engage in "medium"[5] work activities.  R. 265-270.  Both Jonas and Shively found McCleary's subjective complaints to be partially credible.  R. 264, 270.

McCleary was admitted to the University of Pittsburgh Medical Center's Northwest Hospital ("UPMC Northwest") on January 2, 2007, after experiencing weakness on the left side of his body.  R. 278.  He was evaluated by Dr. McLaughlin in the emergency room and provided with inpatient "stroke services."  R. 392.  During his stay at UPMC Northwest, McCleary claimed that he had lost his peripheral vision at the time of his first stroke, and that he had never regained it.  R. 391.  An echocardiogram revealed that McCleary had a "slightly dilated aortic root."  R. 309.  It was determined that he had suffered a "left-sided transient ischemic attack."  R. 278, 385, 387.  McCleary was discharged on January 3, 2007, after threatening to leave UPMC Northwest against medical advice.  R. 279, 386, 392.  "No restrictions" were placed on his ability to work upon discharge.  R. 297.  McCleary was instructed to seek follow-up care with Dr. Gent in a timely manner.  R. 279, 386, 392.

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c), 416.967(c).

On January 24, 2007, Dr. Gent completed a "medical source statement" detailing McCleary's physical abilities and limitations.  R. 372-376, 452-456.  Dr. Gent reported that McCleary could occasionally lift or carry objects weighing up to twenty pounds and frequently lift or carry objects weighing "less than" ten pounds.  R. 372, 453.  Although McCleary's standing and walking abilities were deemed to be limited by balancing problems, his ability to sit was not found to be diminished.  R. 372-373, 453-454.  Dr. Gent indicated that McCleary could "never" climb, balance, kneel, crouch, crawl or stoop, that he was limited to only occasional reaching, handling, fingering and feeling with his right hand, and that he was precluded from reaching, handling, fingering or feeling with his left hand.  R. 374, 455.  McCleary's "seeing" ability was found to be limited.  R. 374, 455.  Dr. Gent suggested that activities such as walking, standing and bending would cause McCleary to abandon his work-related tasks if he were to obtain a job, and that his "disequilibrium" was "incapacitating."  R. 376, 452.  Nonetheless, Dr. Gent also stated that the side effects of McCleary's medications would not create "serious" work-related problems.  R. 376, 452.

Dr. McLaughlin examined McCleary on January 29, 2007.  R. 462-463.  McCleary reported that he would typically experience "severe migraine symptoms" roughly two times per year.  R. 462.  He was able to sit and stand "independently."  R. 463.  Dr. McLaughlin advised McCleary to exercise and lose weight.  R. 463, 505.  When McCleary followed up with Dr. McLaughlin on March 12, 2007, he explained that he had not been successful in his efforts to maintain an exercise routine and stick to a diet.  R. 460, 503.

McCleary was evaluated at the Ear, Nose & Throat Associates of Northwestern Pennsylvania on March 21, 2007.  R. 497.  He complained of "ringing" in his ears and "a gradual reduction of hearing sensitivity."  R. 497.  McCleary was later provided with hearing aids.  R.

486.  McCleary told Dr. McLaughlin on April 10, 2007, that he was experiencing sleeping difficulties.  R. 459.  His medications were adjusted in order to address this problem.  R. 459. On April 18, 2007, McCleary expressed satisfaction with the functioning of his hearing aids.  R. 485.

X-rays of McCleary's hands taken on August 16, 2007, revealed that he had experienced only minimal osteoarthritic changes in the first carpometacarpal joints of both hands.  R. 541. McClearly complained of stiffness in his hands and "difficulty closing his hands to make a fist." R. 535.  A nerve conduction study performed on October 2, 2007, produced "evidence of mild localized involvement of [McCleary's] right ulnar nerve at the elbow segment."  R. 534.  This finding was described as "insufficient" to warrant "a definitive diagnosis of compressive neuropathy."  R. 534.  The report of the nerve conduction study stated that McCleary had "largely recovered" from his previous stroke, but that his peripheral vision was still impaired.  R. 535.

McCleary continued to experience sleeping difficulties.  On October 15, 2007, he informed Dr. McLaughlin that he was not interested in seeking further medications to alleviate that problem.  R. 543.  Dr. McLaughlin suggested that McCleary consider seeing a rheumatologist to obtain treatment for his hand impairments.  R. 543.

### B.    The Additional Evidence Submitted to the Appeals Council

Dr. William J. Fernan, a licensed psychologist, evaluated McCleary on August 15, 2008. R. 563.  Dr. Fernan reported that McCleary's "physical problems and inability to work" had caused him to develop "significant depression."  R. 564.  McCleary was found to have an "extreme" degree of limitation in his abilities to understand, remember and carry out detailed instructions and a "marked" degree of limitation in his abilities to carry out short, simple

instructions and respond appropriately to work pressures and changes in usual and routine work settings. R. 569. A "moderate" degree of limitation was found in McCleary's ability to interact appropriately with co-workers, supervisors and members of the general public. R. 569. Dr. Fernan described McCleary's prognosis as "[e]xtremely poor." R. 567.

McCleary was evaluated by Dr. Devashis A. Mitra for hand and knee pain on August 20, 2008. R. 550. At that time, he was complaining of "weakness in both hands" and an inability "to make a complete fist." R. 550. X-rays conducted on August 22, 2008, revealed that McCleary was suffering from "degenerative changes" in his left hand and right wrist, "[m]ild degenerative disease" in his right hand and "[d]egenerative joint disease" in his left wrist. R. 558. "Mild degenerative changes" were found to have occurred in both of McCleary's knees. R. 559. Dr. Mitra recommended that McCleary undergo occupational therapy "to facilitate hand closure, fist formation and grip strength." R. 550. In accordance with this recommendation, McCleary subsequently received treatment from therapists affiliated with the Keystone Rehabilitation System. R. 572-593.

## VI. DISCUSSION

The first argument raised by McCleary in support of his motion for summary judgment concerns the determination at the third step of the sequential evaluation process that his impairments did not meet or medically equal a Listed Impairment. ECF No. 6 at 19-20. The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a

Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885,

107 L.Ed.2d 967 (1990).  An impairment "matches" a Listing only if it satisfied *all* of the

relevant medical criteria.  *Id.* at 530.  An impairment is "equivalent" to a Listed Impairment only

if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most

similar Listing.  *Id.* at 531.  The claimant bears the burden of presenting evidence to support his

or her allegation of *per se* disability.  *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

The ALJ expressly determined that McCleary's impairments did not meet or medically

equal Listing 11.04.  R. 17.  The language of that Listing provides:

> 11.04 *Central nervous system vascular accident*.  With one of the following more
> than 3 months post-vascular accident:
> A. Sensory or motor aphasia resulting in ineffective speech or communication; or
> B. Significant and persistent disorganization of motor function in two extremities,
> resulting in sustained disturbance of gross and dexterous movements, or gait and
> station (see 11.00C).

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.04 (emphasis in original).  The language

of Listing 11.00C, which is referenced in Listing 11.04B, provides:

> C. *Persistent disorganization of motor function* in the form of paresis or paralysis,
> tremor or other involuntary movements, ataxia and sensory disturbances (any or
> all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or
> peripheral nerve dysfunction) which occur singly or in various combinations,
> frequently provides the sole or partial basis for decision in cases of neurological
> impairment.  The assessment of impairment depends on the degree of interference
> with locomotion and/or interference with the use of fingers, hands, and arms.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 11.00C (emphasis in original).  The ALJ

concluded that McCleary was not *per se* disabled under Listing 11.04 because "[h]e [did] not

have sensory or motor aphasia resulting in ineffective speech or communication or significant

and persistent disorganization of motor function in two extremities, resulting in sustained

disturbance of gross and dexterous movements or gait and station more than three months post-

vascular accident." R. 17.  McCleary takes issue with the ALJ's finding by stating that the record contains evidence of left-sided "sensory disturbance," "aphasia" and "significant balance/equilibrium problems."  ECF No. 6 at 20.  Since McCleary does not contend that his impairment interferes with his speaking or communicative abilities, he cannot satisfy the criteria applicable under Listing 11.04A.  The critical question is whether his impairments are *per se* disabling under Listing 11.04B.

When McCleary was first examined by Dr. McLaughlin on April 24, 2006, he had "5/5 strength" in his upper and lower extremities. R. 142.  Dr. Virgile found no limitations in McCleary's ability to stand or walk.  R. 208.  At the time of his brief hospitalization on January 2, 2007, McCleary complained of ambulation problems and stated that his left foot had been dragging.  R. 391.  Dr. McLaughlin evaluated McCleary in the emergency room and reported that he had "4+/5 motor strength in the upper and lower limbs."  R. 310.  McCleary was discharged the next day, after threatening to leave UPMC Northwest against medical advice.  R. 279, 386, 392.  On January 29, 2007, Dr. McLaughlin reported that McCleary once again had "5/5 strength" in his upper and lower extremities.  R. 462.  McCleary was able to sit and stand independently.  R. 463.  These findings remained unchanged when McCleary was examined by Dr. McLaughlin again on March 12, 2007.  R. 460.  Even if two of McCleary's extremities were sufficiently impaired to implicate Listing 11.04B as of January 2, 2007, they did not remain in that condition long enough to satisfy that Listing's three-month durational requirement.[6]  Under these circumstances, McCleary cannot impugn the ALJ's finding with respect to Listing 11.04. *Buccheri v. Astrue*, 586 F.Supp.2d 54, 61 (D.Conn. 2008).

---

[6] The fact that the ALJ discussed this evidence in the portion of his opinion addressing the issue of McCleary's residual functional capacity rather than in the portion of the opinion addressing the issue of *per se* disability is of no dispositive significance. *Cop v. Commissioner of Social Security*, 226 Fed. Appx. 203, 208 (3d Cir. 2007).

McCleary claims that the ALJ erred in failing to consider his eye impairments under

Listings 2.03 and 2.04.  ECF No. 6 at 20.  Those Listings provide:

> 2.03 *Contraction of the visual field in the better eye*, with:
> A. The widest diameter subtending an angle around the point of fixation no
> greater than 20 degrees;
> OR
> B. A mean deviation of -22 or worse, determined by automated static threshold
> perimetry as described in 2.00A6a(v);
> OR
> C. A visual field efficiency of 20 percent or less as determined by kinetic
> perimetry (see 2.00A7b).
> 2.04 *Loss of visual efficiency*.  Visual efficiency of the better eye of 20 percent or
> less after best correction (see 2.00A7c).

20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 2.03 & 2.04 (emphasis in original).

McCleary relies on Dr. Virgile's examination report in support of his position that the ALJ

should have evaluated his impairments under Listings 2.03 and 2.04.  ECF No. 6 at 20.

McCleary is correct in his belief that it was the responsibility of the ALJ to identify the

specific Listings under consideration.  *Burnett v. Commissioner of Social Security*

*Administration*, 220 F.3d 112, 120, n. 2 (3d Cir. 2000).  The only Listing specifically referenced

by the ALJ was Listing 11.04.  R. 17.  Nevertheless, the ALJ's failure to discuss Listings 2.03

and 2.04 do not justify a remand for further proceedings in this case.  In support of his allegation

of *per se* disability, McCleary relies only on the examination report prepared by Dr. Virgile.

ECF No. 6 at 20.  Dr. Virgile reported that McCleary had 42% visual field efficiency, 94%

central visual efficiency and 39% visual efficiency in his right eye (*i.e.*, his "better eye").  R.

206-207.  These findings clearly fail to satisfy the criteria applicable under Listings 2.03 and

2.04.

The argument advanced by McCleary with respect to Listings 2.03 and 2.04 does not

appear to be based on the notion that his impairments meet or medically equal those Listings in

isolation.  Instead, McCleary argues that the ALJ should have *combined* the criteria contained in

Listings 2.03, 2.04 and 11.04 in determining whether he was *per se* disabled.  ECF No. 6 at 20.

This contention is based on a misunderstanding of the applicable law.  Although a claimant's

*impairments* must be combined for the purpose of determining whether he or she is *per se*

disabled, the Commissioner does not combine the *criteria found in different Listings* in making

such a determination.  *Zebley*, 493 U.S. at 531 n. 11 ("For example, if a child has both a growth

impairment slightly less severe than required by listing § 100.03, and is mentally retarded but has

an IQ just above the cut-off level set by § 112.04, he cannot qualify for benefits under the

'equivalence' analysis—no matter how devastating the combined impact of mental retardation

and impaired physical growth.").  Because McCleary's argument is premised on an incorrect

understanding of the law, it does not provide a basis for further administrative proceedings.

McCleary contends that the ALJ erred in failing to determine whether his obesity was a

"severe" impairment, and in failing to consider that impairment in assessing his residual

functional capacity.  ECF No. 6 at 20.  As an initial matter, McCleary was not *denied benefits* at

the second step of the sequential evaluation process.  *McCrea v. Commissioner of Social*

*Security*, 370 F.3d 357, 361 (3d Cir. 2004)(remarking that "step two is to be rarely utilized as [a]

basis for the denial of benefits").  Since the ALJ determined that McCleary had "severe"

impairments, this case proceeded through the remaining steps of the process.  R. 16-21.  The

assessment of a claimant's residual functional capacity must account for both "severe" and

"nonsevere" impairments.  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  Where at least one

impairment is found to be "severe" and the limitations resulting from the claimant's remaining

impairments are properly considered, an error committed at the second step of the process with

respect to one of those other impairments is inconsequential.  *Lewis v. Astrue*, 498 F.3d 909, 911

(9th Cir. 2007); *Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987).

Two decisions of the United States Court of Appeals for the Third Circuit are relevant to the issue of McCleary's obesity.  In *Rutherford v. Barnhart*, 399 F.3d 546, 552-553 (3d Cir. 2005), the Court of Appeals held that an administrative law judge's failure to discuss a claimant's obesity did not warrant a remand for further proceedings under circumstances in which the claimant had neither relied on her obesity as a "disabling" impairment nor explained the impact that her obesity had on her ability to work.  In *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504-505 (3d Cir. 2009), the Court of Appeals found reversible error under circumstances in which an administrative law judge had failed to consider a claimant's obesity in determining her residual functional capacity after specifically finding her obesity to be a "severe" impairment.  The Commissioner persuasively argues that this case is controlled by *Rutherford*.  ECF No. 8 at 13-15.  Obesity was not among the impairments listed by McCleary in support of his allegation of disability.  R. 96.  Even at this late date, McCleary offers no explanation as to whether his obesity results in functional limitations beyond those caused by the impairments specifically mentioned in the ALJ's decision.  ECF No. 6 at 20.  Accordingly, the ALJ's failure to discuss the impact that McCleary's obesity had on his ability to work provides no justification for disturbing the administrative decision under review.  *Rutherford*, 399 F.3d at 552-553.

In the portion of his opinion discussing McCleary's residual functional capacity, the ALJ discussed the documentary evidence that had been supplied by Dr. Gent, Dr. McLaughlin and Dr. Virgile.  R. 17-20.  Dr. McLaughlin never rendered an opinion concerning McCleary's work-related capabilities.  Dr. Virgile indicated that McCleary was limited to occasional balancing and

16

climbing, that his reaching and seeing abilities were limited by his impairments, and that it would be dangerous for him to work around moving machinery. R. 209. According to Dr. Virgile, McCleary was otherwise capable of performing work at the "very heavy"[7] level of exertion. R. 208. By finding McCleary to be capable of performing "light" work, the ALJ found significant lifting and carrying limitations that had not been identified by Dr. Virgile. R. at 17.

The ALJ did not specifically incorporate Dr. Virgile's balancing, climbing and environmental limitations into his residual capacity finding. R. 17. This failure, however, amounted to nothing more than a drafting error in this case. The ALJ's hypothetical question to Dr. Monaco accounted for those limitations. The hypothetical question described an individual who was absolutely precluded from balancing, climbing, operating motor vehicles and working with dangerous machinery. R. 42. These limitations far exceeded those identified by Dr. Virgile, who believed McCleary to be capable of balancing and climbing on an occasional basis. R. 209. Where an administrative law judge omits an established limitation from his or her hypothetical question, there is a danger that the vocational expert will answer that question by identifying jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). This case involves the opposite situation. When considered in relation to the challenged residual functional capacity finding, the ALJ's hypothetical question to Dr. Monaco was overinclusive rather than underinclusive. R. 17, 42. Consequently, Dr. Monaco's testimony established the existence of jobs that were consistent with McCleary's residual functional capacity even if it is assumed that

---

[7] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

the hypothetical question (rather than the ALJ's subsequent residual functional capacity finding) accurately reflected McCleary's abilities and limitations.

McCleary argues that the ALJ erred in rejecting Dr. Gent's findings. ECF No. 6 at 20-22. This argument clearly lacks merit to the extent that it is based on Dr. Gent's June 9, 2006, statement to the DPW. R. 195. It is axiomatic that the ultimate question of disability is reserved for the Commissioner's determination. *Wright v. Sullivan*, 900 F.2d 675, 683 (3d Cir. 1990); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). Insofar as McCleary's argument is based on Dr. Gent's "medical source statement" of January 24, 2007, it fails for two reasons. First of all, it was within the ALJ's discretion to credit the opinion of Dr. Virgile over that of Dr. Gent. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(recognizing the Commissioner's prerogative to "choose whom to credit" in the event of an evidentiary conflict); *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985)(remarking that a consultative examiner may bring a level of "impartiality and expertise" to the adjudicatory process that cannot be offered by a treating physician). By limiting McCleary to "light" work (even though Dr. Virgile had found him to be capable of performing a limited range of "very heavy" work), the ALJ partially credited Dr. Gent's opinion in any event. R. 17, 372. Furthermore, the ALJ specifically asked Dr. Monaco at the hearing whether the jobs identified in his earlier testimony could be performed by an individual with the previously-described limitations who was limited to "sedentary" (rather than "light") work. R. 43. Dr. Monaco responded by stating that while the number of available jobs would decrease, the remaining jobs (which were numerous enough to satisfy §§ 423(d)(2)(A) and 1382c(a)(3)(B)) could be performed by such an individual. R. 43. He explained that the "sedentary" unarmed guard positions would be more properly characterized as surveillance system monitor positions. R. 43. Dr. Monaco further testified that these "sedentary" jobs could

be performed by an individual who needed a sit/stand option.  R. 43.  When McCleary's counsel

posed follow-up questions incorporating all of the limitations contained in Dr. Gent's "medical

source statement," Dr. Monaco testified that an individual with those limitations would still be

capable of performing roughly 69,000 surveillance system monitor positions existing in the

national economy.  R. 44-45.  Hence, McCleary would not have been able to establish his

entitlement to benefits under the Act even if the ALJ had found all of the limitations listed by Dr.

Gent to be credible.

     In determining whether the Commissioner's "final decision" is supported by substantial

evidence, the Court cannot consider the additional evidence that McCleary submitted to the

Appeals Council in support of his request for review.[8]  *Matthews v. Apfel*, 239 F.3d 589, 592-595

(3d Cir. 2001).  Where the Appeals Council denies a claimant's request for review, the decision

of the administrative law judge becomes the "final decision" that is subject to review under §

405(g).  *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000).  Only a

---

[8] This issue has divided the federal Courts of Appeals.  Compare *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262-1267 (11th Cir. 2007), *Higginbotham v. Barnhart*, 405 F. 3d 332, 336-337 (5th Cir. 2005), *Perez v. Chater*, 77 F. 3d 41, 45 (2nd Cir. 1996), *O'Dell v. Shalala*, 44 F. 3d 855, 859 (10th Cir. 1994), *Ramirez v. Shalala*, 8 F. 3d 1449, 1452 (9th Cir. 1993), *Nelson v. Sullivan*, 966 F. 2d 363, 366 (8th Cir. 1992), and *Wilkins v. Secretary of DHHS*, 953 F. 2d 93, 96 (4th Cir. 1991) (en banc), (holding that evidence not presented to the administrative law judge but subsequently submitted to the Appeals Council, which later denies review, should be considered by the District Court), with *Matthews v. Apfel*, 239 F. 3d 589, 593-594 (3rd Cir. 2001), *Cotton v. Sullivan*, 2 F. 3d 692, 695-696 (6th Cir. 1993), and *Eads v. Secretary of DHHS*, 983 F. 2d 815, 817-818 (7th Cir. 1993), (holding that evidence not presented to the administrative law judge but subsequently submitted to the Appeals Council, which later denies review, should not be considered by the District Court unless the claimant shows "good cause" for not having submitted the evidence to the administrative law judge).  See also *Mills v. Apfel*, 244 F. 3d 1, 4-6 (1st Cir. 2001), (holding that an administrative law judge cannot be faulted for failing to consider unavailable evidence, but that the Appeals Council's denial of a request for review may be judicially reviewable where the Appeals Council relies on an "egregiously mistaken ground" for its action).  This Court's reasoning is consistent with the decision of the United States Court of Appeals for the Third Circuit in *Matthews v. Apfel*, 239 F.3d 589 (3d Cir. 2001).

"final decision" of the Commissioner may be reviewed in this context. *Califano v. Sanders*, 430 U.S. 99, 108-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).  No statutory provision provides this Court with subject-matter jurisdiction to review the decision of the Appeals Council denying McCleary's request for review.  *Matthews*, 239 F.3d at 594; *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1524 (3d Cir. 1992).

The sixth sentence of § 405(g) provides that a reviewing court may order the Commissioner to consider additional evidence "upon a showing that there is new evidence which is material," and that the claimant had "good cause" for failing to present such evidence to the Commissioner before the issuance of the administrative decision under review.  42 U.S.C. § 405(g).  McCleary asserts that the information submitted by Dr. Fernan and Dr. Mitra constitutes "new evidence which is material," and that a remand for further administrative proceedings is in order.  ECF No. 6 at 22-23.  It is not clear whether this information would satisfy the Act's materiality standard.  *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984)("An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.").  That question need not be answered, since McCleary makes no attempt to demonstrate that he had "good cause" for not obtaining the reports from Dr. Fernan and Dr. Mitra before the issuance of the ALJ's decision.  ECF No. 6 at 22-23.  At the hearing, the ALJ specifically asked McCleary whether he had been treated for a "mental or emotional problem."  R. 29.  McCleary responded in the negative.  R. 29.  His counsel declined an opportunity to submit additional evidence subsequent to the hearing.  R. 25.  Under these circumstances, McCleary cannot show that he had "good cause" for not securing the reports from Dr. Fernan and Dr. Mitra prior to the Commissioner's

"final decision" in this case. *Matthews*, 239 F.3d at 595. The Court has no occasion to consider whether a finding of disability would have been warranted in this case if McCleary had obtained and submitted these reports before June 20, 2008.[9]

**VII.    CONCLUSION**

For the foregoing reasons, the Commissioner's decision denying McCleary's applications for DIB and SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Accordingly, McCleary's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted. In accordance with the fourth sentence of § 405(g), the decision of the Commissioner will be affirmed. An appropriate order will follow.

Date: September 15, 2011

s/David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     James Bukac, Esquire
        Albert Schollaert, AUSA

        (Via CM/ECF Electronic Mail)

---

[9] The Commissioner correctly points out that McCleary can file new applications for DIB and SSI benefits if he believes that he became disabled after June 20, 2008. ECF No. 8 at 24. McCleary remained insured for Title II benefits through March 31, 2009. R. 16, 92, 125.